We will begin with Mr. Lee, who has reserved two minutes of rebuttal time. So that gives you eight out of the gate. Floor is yours. Thank you, Your Honor. Before I address the merits, I want to note that we filed the letter yesterday on a jurisdictional point. Whether this appeal is new in light of the family's move to Long Island. Yeah, I have to say, you described it as intervening facts. It seems to me like they weren't really intervening. It seems like the discovery may have been intervening, but these are pretty old facts. This is 2000 November 2019, right? Yes, and I apologize, Your Honor, in the in the in prep and preparing for this argument, and then in preparing for the letter that we filed, we discovered these facts, and we and we started to realize that there could be a question about mootness and in several other related appeals that have also involved these attorneys and similar situated parents. We have raised the issue of jurisdiction before in light of these, in light of the particular unique procedural posture. So we felt it was better that we filed that letter, even though we came on the eve of moral argument, just to make clear to the court that we did, you know, finally see this issue and wanted to address it in case this panel had questions. I'm sorry, if I understand you correctly, you are not pursuing this action so that you can, if successful, recoup the money you paid for the child's education for the past school year. Is that right? That's right, Your Honor. We have we doesn't that add to the mootness concerns here? Well, yes, thank you for posing that question. I think our position is that in this particular in these types of particular circumstances where the pendency order is not really based on a legitimate theory of pendency, a school district could seek recoupment. We reckon it's an open question. I think the other side will tell you it's foreclosed by the circuit case law. That being said, we think it was the move outside of New York City that sort of raises this question. But we ultimately believe that this appeal appears to present a live controversy because we really aren't in a position to know if the family intends to move back and return to Ibram. You know, we obviously don't represent the parents. But if this court concludes otherwise, we would respectfully we respectfully submit that vacature is appropriate here, particularly in light of the fact that the circuit has in identical cases really materially to this case has help has vindicated the department's view of how pendency works. Can I ask you, though? I mean, if yes, they've moved to Long Island, if that is accurate, and they decided then to move back to New York, they'd have to start all over, wouldn't they? They couldn't just get in line where they were. You know, at the time of the appeal, the appeal being filed, could they? Well, I think they would have to file a new due process proceeding and then seek an interim order on pendency. But I think there was an argument, there's a recognition that the district court order because it overruled an SRO order that went in favor of us, that that essentially dictates where pendency would be in the city, if they were to move back to the city. And because of that continuing consequence, if this case does not move, we think it should be reversed. But I mean, if you leave the city, it's only for two years, it's still not not moved if you plan to come back in two years. Well, I think that's, I think that really sort of hinges on whether the family's if we, I guess we're in a position in the department, we think it raises an issue of mootness. We aren't able to say definitively what the family's intentions are. And I think if opposing counsel can clarify that, we may come to a recognition that the case is in fact moved because the family intends to stay in Nassau County or Long Island, wherever they are. So I guess we saw this as an appropriate question for the panel to consider, which is why we followed that letter. But I'm happy to proceed to the merits in case this panel believes that the case is not moved. Can I just I'm sorry to not get off the mootness yet. But I'm trying to understand how if someone leaves the district, and then comes back at some subsequent point, why they don't have to just start with a brand new IEP. Are you suggesting that the old IEP that might be outdated by a year or two or three, somehow it in New York, it would sort of live on sort of in suspended animation. And then if they were to move back, that IEP sort of is revived, you wouldn't need to just start over. So what's pending? What's the I don't understand that how there's a pendency placement if someone's not here to begin with. Well, right now there isn't in right. Well, at least Yeah, let's come back. Just back to Judge Sullivan's question is, and I don't know how this works. So I'm interested in both parties enlightening us. Why is it not the case that the family would just have to start again in New York City with a new IEP? I think the family Well, so here's how I understand your honor. I think if the family moves back, there is a new IEP proposed. And if the family disputes that they can file a due process complaint. And that starts sort of what is pending, right? And they can seek a pendency placement, I think they can then turn to that IHO officer and say, the last time the child was in New York, and obviously the facts might be very different if this is a two year move, a one year move versus a 10 year move, I think a 10 year move, the it may be so different that frankly, there is no resemblance between what the kid needs at that point, 10 years later versus now, but assuming it's a very close move, I think then there is potentially a question of what the child needs, how close is that to what the educational placement was ordered in this case. And given in this case, we were directed to comply. And it was basically the effect of the district court order made pendency at eyebrain eliminating the school district's ability to choose in accordance with Ventura de Paulino, where pendency is placed, there could be a continuing sort of impact of the district court's decision that if this case if this appeal is not moved, would require full reversal here. Is that are you suggesting it would be somehow viewed as legally binding on the hearing officer or they would simply say, Well, look, that's where you left off. And that seems awfully sensible to start again. Or are you suggesting that somehow that the hearing officers hands would be tied in some sort of issue preclusion sense. And that's what I'm trying to figure out how issue preclusion would would kick in. I, my understanding from my client is that it would be there would be a binding effect of the district court's opinion in light of sort of what happened here, because it superseded a SRO decision. So that's why there is a potential continuing consequence of the district court's opinion. Do you want me to proceed to the merits? I'm happy to discuss that as well. Um, I mean, I don't know if any of the panelists have any questions about the merits. No. I don't either. I think we've spoken on this twice before. All right. Thank you. Mr. Lee, you reserve two minutes for rebuttal. So we're now here for Mr. Albert. Thank you. If you if it pleases the court. My name is Peter Albert. And I'm of counsel to the for the parents in this case. But before I address the substance of the appeal, I would like to discuss this $11 letter, which was literally almost filed on the $11 prior to this oral argument. Quite honestly, I think this letter is nothing more than almost a circus stunt. Um, it's disruptive of the process. I don't know on what basis it was filed or what procedural mechanism that would have permitted the accountants to the files. I thought I thought Mr. Lee filed this for informational purposes, the motion to dismiss this appeal as moot would be your clients. If you're not if you're telling us your clients are not moving for dismissal as moot. I mean, because there might be some questions about whether it really is moot depending on your client's circumstances in their future intent. Are you telling us you don't want this dismissed as moot? You're not you're not prepared to put forward whatever facts would establish its mootness? I think I think it would be preferable that this court issue a determination on the merits of the appeal. This this this, you know, we don't we don't decide whether the parties would prefer to have a merits judgment. But I mean, the questions that we would have about whether its moot would pertain to your clients, their move to Long Island, their future intentions, etc. You're not putting anything forward in that regard. And you're not urging us to find this appeal moot. Is that right? That's correct, Your Honor. Thank you, Judge Sullivan. I mean, look, you may have certain obligations as an officer of the court, Mr. Albert to make sure that we are aware of facts that would make this moot. Well, the facts raised in counsel's letter for DOE are certainly not new. The DOE has been aware of the fact that the student moved almost almost a year ago to the to the day. And it's it's also irrelevant with respect to this case involves the 1819 school year. It does not involve anything in the future. Penancy is a statutory right. It it it covers an individual school year. It can set but I thought the representation was that there was a payment made and a resolution of the dispute for that year. Is that wrong? No, Judge. The judge in the lower court, Judge Torres, found that the student was in fact entitled to a finding of pendency and issued properly. So a preliminary injunction against against the DOE. The significant fact in this case, unlike the facts in the case, the Nesky case, which is on a petition for rehearing before the second circuit, and also the de Paulino case, is that the DOE failed to make any recommendation for a pendency placement in this case. I'm sorry, Mr. Albert, could you just take a step back for me? What was the relief you sought in the district court with your complaint? It was multiple things. Essentially, it was to appeal an order of the state review officer, which is the relief, just the remedy you wanted, not the basis your claim. What was the relief you sought? And I'll cut to the chase. I'm not trying to hide anything here. My question is, ultimately, have you received all of the relief that you sought, in the sense that the city has paid for your client's placement for 2018 to 19, and your client has left, so the client is not looking for future placement relief from the city? So my question, I suppose, I'll cut to the chase, is there any relief you sought that you have not obtained? Well, while pendency involves multiple things, you're correct, Your Honor, in that payment was made on behalf of the student for pendency. And the city has now represented they're not going to try to recoup that. So that's done. It would be our position that that's not possible under very clear precedent. Okay, second, they've even conceded that they're not even going to try. Okay, the second, but the but the second, the second piece that the parents sought in connection with their with their lawsuit, is a recognition of a determination of what pendency is for the In other words, the payment would be fine to essentially maintain the student's status quo educational program and placement, so that it's not disrupted during the course of the adjudication of the due process hearing. But then that's only half, that's only half. The second half is really that order, that declaration that says this, the student's pendency rights are at x, and it would identify the elements of that educational program and placement. That then becomes the defining fact to reestablish what the status quo is for that student moving forward. And does that include other school districts are only if they were to return to York? It would, it would certainly serve as, as, as, as being illustrative, not necessarily dispositive, but it certainly would be illustrative of what the student was receiving, what was determined to be appropriate for that student at that time. Clearly, over time, and to a different district, you know, there could there could be issues that would make it no longer appropriate. The student could need additional services, student could need fewer services. So it's, it's hard to predict the dispositive nature of it moving forward. Right, but so if this is about a preliminary injunction, right, and so if you will go back to the district court, what, what's going to happen there? There would be a determination as to what pendency is, even though your client is no longer in the New York public school system or seeking to be. Well, is that correct? You get an advisory opinion as to what pendency is, because it might be valuable for future reference? Well, it's, it's, it would be it wouldn't be an advisory opinion, it would be based on facts for a particular school year, a discrete period of time, which, which has not, which has not issued. We're not seeking an advisory opinion. May I ask, Ms. Gerard, but purely for informational purposes, what school system is the child in now? Is he still in the BRAIN program or is he in some other program? My understanding is that the parents moved to, to Nassau County, and their district of residence has placed the student in a special education school. I don't recall if it's considered a BOCES program, a Board of Cooperative Educational Services program, or if it's a program that's operated by their, their local school district. And have the parents given up all New York residents? I ask that because for some people who've moved to the island after, say, the spring of this year, it's been a temporary move while everyone copes with the virus. Your clients moved in November of 2019. Is there's a no New York City residents anymore? I can't, I can't address that because I don't know factually what their intentions were. See, if you, if you were making the motion to dismiss this appeal as moot, I would expect it to be supported by those facts. Thank you. If you're out of time, Mr. Albert, but we'll give you a little bit of time to talk about the, the merits, particularly in light of the 28 J letters that we asked for. Well, with, with respect to the, to the merits of the case, perhaps I can just take a minute to, of my time to, to introduce who the, who the Soria family is, and their three plus year struggle to, to, to obtain. No, let's not do that. Let's not do that. No, let's talk about whether or not Ventura Paulino and Nesky have already decided this case because they're factually and legally indistinguishable. I, I, I would appreciate that opportunity with, with respect to Nesky, which this court had issued, it's a summary decision. The case there, judge Caproni in her initial decision, essentially got the facts wrong. She found that the DOE had offered the students prior program at a school called I hope to the student for appendency placement. That was simply incorrect on a motion for reconsideration. Judge Caproni changed gears and, and, and determined that that did not happen. However, she erred by doubling down on the, on the, on the, her determination that a school make a recommendation for appendency placement. That ruling is, is, is simply incorrect. We're more concerned about the second circuits decision. So let's focus on those. Well, we, we agree that the deep Paulino case that the law espoused by this circuit is correct. Um, that the school district has the obligation and the sole responsibility and authority to, to make a recommendation as to the location for students pendency placement. However, there is a situation in which the panel in that case determined that what happens if the school district does not make a recommendation and, or that recommendation for pendency is not available. I first note that the unavailability issue is nowhere to be found. It's not within the statute, the regulations, or in, in any, um, precedent in any circuit that we're aware of. However, in footnote 65 of the deep Paulino case, um, the court recognizes that that scenario could exist. And it's our position that this case, the Soria case is exactly the scenario that fits footnote 65. Well, is there anything in the complaint to suggest that I hope was effectively unavailable, uh, for your client? Um, the record, the re well, yes, within, within, within that, within that case, the, the situation involving, um, I hope is that the DOE never recommended I hope to the student for a pendency placement, clearly using the deep Paulino rationale, where it's only the DOE who has the authority to make a recommendation for, for pendency. If they don't recommend it, it certainly can't be available to the parents. Secondly, there was a financial issue with respect to, um, the, I hope school for two years, the, the, the, the parents had enrolled, uh, the student in this case, uh, in Soria at the, I hope school for a total sum of a hundred dollar deposit each of the years for the 18, for the 17, 18 school year, a hearing officer even determined that I hope was in fact appropriate for the, for the, for the student. However, the following year for the 18, 19 school year, which is the year at issue in this case, the, I hope school changed as this court might be aware of from prior, uh, from prior matters, particularly the school changed in that rather than just a hundred dollar deposit thing, the school now required parents to pay a thousand dollars upon enrollment, $24,000 on the first day of school, and then $40,000 both in September and another $40,000 in January. That simply was not in the cards for this family. Is that in the record? Is that in your complaint? I don't know if it was in the complaint. It's not in the complaints quite honestly, because unavailability is not, was not a requirement. Penance, penancy is under 1415 J of the individual with disabilities and education act is an automatic injunction. It's without regard to a showing of irreparable harm. It's without a showing of likelihood of success in the merits with any of the typical standards required for a preliminary injunction. It's automatic upon the filing of the administrative due process complaint in this. Let me see if the panelists have any other, any questions for you, because we are way over. Judge Nardini? No. All right. So let's, let's stop there. Mr. Lee did reserve a couple of minutes for rebuttal. Thank you. Thank you, your honors. I just want to briefly touch on both the mootness point and on the merits in light of my opposing counsel's presentation. Just really quickly on mootness, this is not a circuit stunt. We did do it for informational purposes out of our obligations as an officer of the court. And we have raised jurisdictional points. Once we, in appeals, learn about it, we've done it in Mazuda and Mendes and Cohen and Donahue. So this is absolutely not a circus stunt. And I just want to make that clear. No, I mean, I think you could be criticized for not noticing it sooner so that we were not doing this literally hours before an argument. I hear that, your honor, and we apologize. And it just so happened in this case, I am not offering excuses. But by the time we found out about it, we then realized and we tried to move as quickly as possible. So apologies. On the merits, I think his argument basically boils down to two things, which is one, that the DOE supposedly failed to offer a pendency placement because it never chose a pendency. The opposing counsel and his law firm have made this argument before. I can cite you chapter and verse in the briefs in the Carrillo, Ventura di Paulino, and Neske briefs. And I can offer them to you right now. He made this argument on page 26 of the Carrillo appellee brief. He made this on pages 13 and 14 of the Ventura di Paulino reply brief and on pages 14 and 15 of the Neske opening brief. There is no question that this court rejected this argument. This court recognized in both Neske and Ventura di Paulino that when DOE chose not to appeal the prior school year's administrative decision, I hope became the pendency placement. And that reflects well-established rules about pendency, which is that it is whatever was last agreed upon by the party. And it also reflects the well-established principles that parents don't have a veto right over school choice. And for an extended discussion of this argument, I will refer you to the Neske district court opinion in both of its opinions discussing this. So there's no question this argument was raised and rejected at both levels. The second argument is basically that his clients effectively had no choice but to make the unilateral move to iBrain. He's made this argument before as well without any factual assertion. This is the first time that I've heard in this case that he's it's definitely not in the record. And the chapter and verse sites for this argument is pages 28 of the Ventura di Paulino reply brief, pages 27 and 28 of the Mendez opening brief. Mendez was one of the cases heard in tandem with Ventura di Paulino. There were three cases heard, but that case was actually dismissed on jurisdictional grounds because of a letter that we raised. And he raised this argument on pages 24 and 25 of the Neske opening brief. And so again, this court rejected this argument. This court recognized in both Ventura di Paulino and Neske, the situation at issue in all of these cases was not the situation reserved in footnote 65 because I hope was available and DOE did not refuse or fail to offer pendency. So unless the panel has any other questions about the merits, we rest on our briefs and our letters. All right. Thank you very much. We will reserve decision.